So Ordered.

Dated: March 29th, 2021


FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

CHRISTOPHER MICHAEL SCHULTZ and ALYSSA SCHULTZ,

Debtors.

Case No. 18-01804-WLH7

**MEMORANDUM DECISION**

    As this court has explained elsewhere, access to bankruptcy relief is a privilege not a right.[1] Congress imposed several conditions debtors must satisfy to obtain relief under the Bankruptcy Code. In some instances, Congress gave bankruptcy courts power to waive or reduce certain of these conditions. Congress has not, however, extended this power in all instances.

    In this case, joint debtor Christopher Michael Schultz asks the court to relieve him of two statutory requirements: completion of an instructional course and attendance at a meeting of creditors. These requests require the court to determine whether it has the authority to grant the relief and, if so, whether Mr. Schultz has satisfied the necessary criteria. For the reasons set forth below, the court answers both questions in the negative and, therefore, denies Mr. Schultz's requests.

---

[1] For an example, see *In re Shreves*, Bankr. Case No. 19-02974 (E.D. Wash. Feb. 10, 2020), ECF No. 23 at 4, and the authorities cited therein.

MEMORANDUM DECISION      1

# BACKGROUND AND PROCEDURAL POSTURE

The joint debtors initially filed a voluntary chapter 13 petition to initiate this bankruptcy case. Among other requirements, both debtors participated in a prepetition credit counseling course and both apparently attended the "meeting of creditors" as required by Bankruptcy Code sections 109(h)(1) and 341(a) respectively. After several plan modifications, the court confirmed the debtors' plan. Following the chapter 13 trustee's motion to dismiss the case based on the debtors' failure to submit required plan payments, the court granted the debtors' motion to convert their case to one under chapter 7 of the Bankruptcy Code.

After conversion, the new meeting of creditors was scheduled to be conducted via telephone on December 15, 2020, and the court notified the debtors of their obligation to file a certificate evidencing completion of a postpetition personal financial management course. A few months later, the court notified the debtors of their failure to provide the required certificate and indicated that the court would close the case without discharge if the debtors did not do so within approximately thirty days. Three days later, joint debtor Alyssa Schultz filed the required certificate.

Shortly thereafter, debtors' counsel filed the motion at issue here. In the motion, Mr. Schultz seeks an order "waiving the requirements for the Debtor to attend a 341 Meeting of Creditors and to complete an instructional course in personal financial management."[2] In support of the requests, counsel submitted a declaration stating that Mr. Schultz "has been incarcerated since July 20, 2020 and will not be released in the foreseeable future."[3] The declaration provides no additional facts.

# DISCUSSION

## *Relief From the Instructional Course Is Not Warranted on the Present Record*

In bankruptcy cases filed by individuals, the Bankruptcy Code requires petitioners to complete two instructional courses in sequence. First, to be eligible as a debtor under the Code, a petitioner must certify that he or she completed a credit counseling course within a certain timeframe before filing the petition.[4] Second, to receive a discharge, the debtor must complete a financial management

---

[2] Mot. to Waive Meeting of Creditors and Personal Financial Management Course Requirements, ECF No. 111.

[3] O'Leary Decl., ECF No. 112.

[4] *See* 11 U.S.C. §§ 109(h)(1), 521(b)(1); Fed. R. Bankr. P. 1007(b)(3).

course after filing the petition – the deadlines for doing so vary depending on the chapter.[5]

Recognizing that a strict application of these requirements could prevent relief for individuals who are unable to comply for reasons beyond their control, Congress provided certain exceptions. The Bankruptcy Code provisions setting forth exceptions to the required postpetition financial management course simply refer to a subset of the statute's broader exceptions to the required prepetition credit counseling course.[6] Under this provision, a debtor need not complete the required course if "the court determines [that the debtor] is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone."[7] The statute puts further meat on the bones of two of these criteria – "incapacity" is defined to mean "that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities" and "disability" is defined to mean "that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing."[8]

As other courts applying this language have observed, Congress used clear, unambiguous language in delineating the exceptions.[9] And, of course, long established canons of statutory interpretation require courts to apply statutes as written when possible.[10]

Applying the exceptions to Mr. Schultz's request, there is no evidence or allegation that he is currently engaged in military service,[11] that he suffers from

---

[5] *See* 11 U.S.C. §§ 727(a)(11), 1328(g)(1); Fed. R. Bankr. P. 1007(b)(7), (c); 4004(c)(1)(H).

[6] *See* 11 U.S.C. §§ 727(a)(11), 1328(g)(2). The provisions also set forth another exception when the U.S. trustee deems the courses in the district inadequate. This exception is not applicable here.

[7] *Id.* § 109(h)(4).

[8] *Id*.

[9] *See, e.g.*, *In re Alexander*, 432 B.R. 41, 44 (Bankr. N.D.N.Y. 2010); *In re Goodwin*, 2009 WL 6499330, at *1 (Bankr. N.D. Ga. March 12, 2009).

[10] When construing statutes, courts apply a "cardinal canon before all others" and "must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous . . ., this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (cleaned up). *See also, e.g.*, *Sloan v. Lewis*, 89 U.S. (22 Wall.) 150, 155 (1875) (explaining, in the process of resolving a dispute about the Bankruptcy Act of 1867, that "we must look in the first place to the act itself" and "[i]f the intention of Congress is manifest from what there appears we need not go further").

[11] It is unlikely that Mr. Schultz is engaged in military service as his schedules fail to so indicate. *See* Sch. I, ECF No. 1; Am. Sch. I, ECF No. 107. It is almost certain that Mr. Schultz is not currently in a combat zone by virtue of his incarceration.

MEMORANDUM DECISION 3

mental incapacitation, or that he is physically impaired. While some creative bankrupt inmates have argued that the extreme restrictions in a prison functionally equate to the limitations of a disability, this creativity has largely been rejected, including because one cannot conflate a generalized *inability* with a physical *disability* – let alone a disability rising to the severity contemplated in the exception here.[12] Due to this unavoidable distinction, the clear majority of courts to address the issue hold that involuntary confinement does not amount to a physical impairment qualifying a debtor for an exception under the statute.[13] Holding otherwise is simply adding to the list of existing exceptions.[14]

Because the record contains no facts supporting Mr. Schultz's request to relieve him of the obligation at issue, the court will deny the request. If actually applicable based on his circumstances, Mr. Schultz may supplement the record to provide evidence consistent with one of the three qualifying exceptions.[15]

---

[12] *See, e.g.*, *In re Hobbs*, 2015 WL 1805989, at *1 (Bankr. S.D. Ga. April 16, 2015) ("[D]isability refers to a medical condition not to a law of physics that prevents [the Debtor] from walking through walls and iron bars." (alteration in original; citation omitted)); *In re Alexander*, 432 B.R. at 45 ("[T]he statute contemplates an impairment due to physical disability, as opposed to one's personal circumstances." (citation omitted)); *In re Denger*, 417 B.R. 485, 489 (Bankr. N.D. Ohio 2009) (observing that "while incarceration may erect physical barriers to a debtor seeking to complete the financial management course, [it] cannot be equated with a physical impairment"); *In re Goodwin*, 2009 WL 6499330, at *1 ("Being locked up may prevent [the debtor] from being able to take an approved financial management course, but that inability is not caused by a physical impairment within the plain meaning of section 109(h)(4). . . . If the word 'disability' meant inability to show up, it would have been unnecessary to add an exception for a person on 'active military duty in a military combat zone' because those words would merely describe a specific example of a situation manifesting the inability of a debtor to participate . . . and would therefore be redundant."). The court also notes that the evidence here does not state, but only suggests, that Mr. Schultz's level of restriction makes him unable to fulfill his predischarge obligations. Thus, even if more restrictive measures in prison could qualify for the exception, the court could not make the necessary findings on the present record.

[13] *See, e.g.*, *In re Anderson*, 397 B.R. 363, 366-67 (B.A.P. 6th Cir. 2008); *In re Oliver*, 2013 WL 1403336, at *2 (S.D. Ga. March 25, 2013) (collecting cases).

[14] *See In re Alexander*, 432 B.R. at 43 (explaining how extending the exception to debtors on the basis of incarceration would be to "judicially create or write in a fourth exemption from the credit counseling and financial management requirements such that 11 U.S.C. § 109(h)(4) would read to include 'incapacity, disability, … active military duty in a military combat zone[, or incarceration]"); *see also, e.g.*, *Williamson v. Comm'r*, 974 F.2d 1525, 1533 (9th Cir. 1992) ("That we might disagree with a legislative distinction Congress has made, however, does not empower us to rewrite the statute. Our task is to apply the statute's text, not to improve upon it." (cleaned up)).

[15] Inability to qualify for an exception does not necessarily render a debtor unable to receive a discharge. The court understands that debtors can complete some instructional courses online, by telephone, on paper, or through other methods. Debtors not qualifying for an exception but who are otherwise limited – whether as a result of imprisonment or otherwise – should explore which option best fits their situation.

## *Bankruptcy Courts Lack Authority to Waive Attendance at the 341(a) Meeting*

Section 341(a) imposes an obligation on the United States trustee to conduct a meeting of creditors after the filing of a bankruptcy petition.[16] Section 343 imposes a corresponding obligation on a debtor to attend this meeting.[17] Similar to the statutory provision discussed earlier, section 343 is subject to a plain reading.[18] In contrast, Congress omitted language permitting bankruptcy courts to relieve debtors of the obligation to attend the meeting. This omission is noteworthy. Another established canon of statutory construction requires courts to infer that Congress acted intentionally when including language in one part of a statute but omitting such language in another.[19] This maxim indicates that section 343's omission resulted from Congress's conscious decision rather than oversight.

To dispose of any reservations about Congress's resolve, one need only look to a key shift in the bankruptcy court's role codified in the 1978 Bankruptcy Code. As part of the changes, Congress deliberately removed bankruptcy courts from the day-to-day involvement in the administration of bankruptcy cases.[20] Of particular

---

[16] "[A]fter the order for relief . . . the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a).

[17] "[T]he debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a)." *Id.* § 343.

[18] *See In re Cochener*, 360 B.R. 542, 576 (Bankr. S.D. Tex. 2007) ("This statute leaves no doubt that '[a]ppearance at a section 341 meeting is mandatory. It is not waivable.' If this interpretation is not the plain meaning of the statute, then there is no such thing as a plain meaning." (citation omitted)); *In re Bergeron*, 235 B.R. 641, 643 (Bankr. N.D. Cal. 1999) ("It would be hard to argue that the statutory meaning could be any plainer."). The *Bergeron* court applied an exception to the plain-meaning rule. Based on a perceived "bitter irony," that court concluded that it possessed the power to relieve debtors' attendance at section 341(a) meetings because a strict application of the requirement would render results "absurd or impracticable" and "demonstrably at odds with the intention of its drafters." *Id.* at 643-44. This court respectfully disagrees with *Bergeron* for several reasons. For example, while the *Bergeron* court clearly disliked a strict application of the provision, the decision identifies no results of the kind it labels "absurd or impracticable" or "demonstrably at odds with the intent of [the] drafters." Moreover, the *Bergeron* court appeared to assume its authority to grant the relief based on a corresponding assumption that court intervention is necessary to avoid subjectively unwelcome results. Though irrelevant to a statutory analysis, the *Bergeron* court did not consider alternative mechanisms the debtor might consider to accomplish the same goal – such as seeking relief from the United States trustee (see discussion below).

[19] *See, e.g.*, *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 537 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." (cleaned up)); *Egebjerg v. United States Tr. (In re Egebjerg)*, 574 F.3d 1045, 1050 (9th Cir. 2009) ("[W]e also presume that if Congress includes particular language in one section of a statute but omits it in another, Congress acted intentionally in that exclusion."); *United States v. Behnezhad*, 907 F.2d 896, 899 (9th Cir. 1990) (stating that varying degrees of flexibility granted to courts in different provisions of a statute "shows that Congress knew how to give a court flexibility when Congress intended that a court have flexibility" and observing that "[h]ad Congress wished to give a district court more discretion . . . it could have said so").

[20] *See, e.g.*, 3 COLLIER ON BANKRUPTCY ¶ 341.04 (16th ed. rev. 2020) (discussing "one of the policy changes of the [1978 Bankruptcy] Code, which was to remove the court from administrative matters and to end its

---

**MEMORANDUM DECISION**       5

import here, Congress reversed prior practice and prohibited bankruptcy courts from presiding over or attending the meeting of creditors[21] and assigned the task of conducting these meetings to the United States trustee.[22] Consistent with its statutory mandate, the trustee in this region has published procedures for rescheduling meetings of creditors and allowing debtors to appear in alternative manners.[23] Congress's affirmative act and objective to extract bankruptcy courts from involvement in the meetings of creditors and the availability of relief from the United States trustee undermine any contention that the absence of statutory authority for bankruptcy judges to waive the mandates of section 343 was inadvertent. Rather, these considerations support the opposite conclusion.

An even more definitive consideration is the fact that Congress provided a single and narrow exception to the United State trustee's obligation to conduct the meeting of creditors. Section 341(e) provides that "a court . . . for cause may order that the United States trustee not convene a meeting of creditors . . . if the debtor has filed a plan as to which the debtor solicited acceptances prior to the

---

involvement in situations in which it could learn information outside of the context of a dispute on which it would eventually rule").

[21] *See* 11 U.S.C. § 341(c) (strictly prohibiting bankruptcy courts from attending or presiding at the meeting of creditors). Before 1978, bankruptcy judges and their predecessor bankruptcy referees would participate in creditors meetings and examine the debtor. Participation in this nonjudicial process not only tainted the subsequent appearance of fairness and impartiality when the judge or referee acted in a decisional capacity, but also perpetuated public concerns about the so-called "bankruptcy ring." *See, e.g.*, H.R. Rep. No. 95-595, 1978 U.S.C.C.A.N. 5963, 6011. Bifurcating the judicial and administrative aspects of bankruptcy cases between bankruptcy judges and the United States trustee (or the bankruptcy administrator in North Carolina and Alabama) protects the objectivity of bankruptcy judges and better situates their role in a judiciary designed to resolve disputes among parties. *See, e.g.*, *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) ("The 'case or controversy' requirement protects the principle of separation of powers and properly limits the role of the judiciary in a democratic society. In essence, the requirement keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action."). The bankruptcy system in the United States has a long history of allocating responsibilities between the judiciary and parts of the executive branch. *See, e.g.*, *Gen. Stores Corp. v. Shlensky*, 350 U.S. 462, 466-67 (1956) (Douglas, J.) (juxtaposing aspects of Chapter X and Chapter XI cases under the Bankruptcy Act of 1898, including the significantly greater role the SEC played in Chapter X cases).

[22] *See* 11 U.S.C. § 341(a) (requiring that "the **United States trustee** shall convene and preside at a meeting of creditors" (emphasis added)).

[23] *See* United States trustee guidelines and procedures at: https://www.justice.gov/ust-regions-r18/file/r18_reschedule_341_reg_policy.pdf. The trustee's procedures enumerate several bases that constitute cause for relief, including a catchall for "[o]ther compelling circumstances." *See id.*, II.F. Relevantly, a "debtor's incarceration" is a listed item specifically constituting cause. *See id.*, II.D. The trustee recently required that all meetings of creditors be conducted via telephone or video subject to certain exceptions due to the COVID-19 situation. *See* https://www.justice.gov/ust-regions-r18. Thus, this court's inability to grant the requested relief does not deprive a debtor of recourse. Debtors may seek relief and situation-specific accommodations (such as telephonic or online participation) from the United States trustee.

MEMORANDUM DECISION 6

commencement of the case."[24] This exception implicates the canon of construction requiring the court to give meaning to the omission of similar exceptions in section 343 – especially since sections 341 and 343 must be read in tandem.[25] Furthermore, another equally established canon of statutory construction requires courts to avoid interpreting statutory provisions in a manner that renders others superfluous.[26] Construing section 343 to give bankruptcy courts the general power to relieve debtors of their obligation to attend the meeting of creditors strips section 341(e) of significance. Instead, construing sister sections 341 and 343 as written gives distinct purpose to Congress's choice to confer power on bankruptcy courts solely under the narrow circumstance set forth in section 341(e). Such an interpretation not only eliminates superfluity but is consistent with other provisions generally as well as Congress's efforts to remove bankruptcy courts from involvement with the meeting of creditors.

A final consideration weighing against creating an exception that is at odds with the statutory mandate is the Supreme Court's repeated reminder that bankruptcy courts' equitable powers cannot override express provisions of the Bankruptcy Code.[27] In the end, "[t]his court's duty is to apply the law as it exists today, even if that law is questionable from a policy perspective."[28] For all of

---

[24] Congress apparently made a policy choice here to streamline the process by which prepackaged plans flow through bankruptcy, although the leading bankruptcy treatise observes that the provision "is not limited by its terms . . . to cases in which plan solicitation has been completed before the commencement of the case." 3 COLLIER ON BANKRUPTCY ¶ 341.05A (16th ed. rev. 2020). In any event, section 341(e) has no potential application in the context of an individual chapter 7 or chapter 13 case.

[25] *See, e.g.*, A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 10, pp. 107-11 (2012) (describing the negative-implication canon and the associated Latin maxim *expressio unius est exclusio alterius*). As Scalia and Garner explain, reasoning by negative implication must be done carefully and contextually; case law contains many examples of such reasoning failing to carry the day. *See, e.g., Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663-65 (2019) (rejecting argument based on negative inference from several subsections of Bankruptcy Code section 365). In this case, though, the negative implication is unmistakable: codification of section 341(e) shows that Congress (i) recognized that an express provision is needed when Congress wants to give bankruptcy courts power to alter matters regarding the otherwise mandatory meeting of creditors and (ii) enacted a single, narrowly-focused provision to simultaneously confer and limit such power to an exactingly specific situation.

[26] *See, e.g., TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (cleaned up)); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." (citation omitted)).

[27] *See, e.g., Law v. Siegel*, 571 U.S. 415, 427-28 (2014) (reemphasizing that bankruptcy courts lack authority to create equitable exceptions to express provisions of the Bankruptcy Code).

[28] *In re Claar Cellars LLC*, 623 B.R. 578, 602 n.52 (Bankr. E.D. Wash. 2021) (citing cases).

these reasons, the court agrees with those courts that conclude they lack authority to eliminate the requirements imposed on debtors by section 343.[29]

## SUMMATION

The court must deny Mr. Schultz's requests for relief. Although Congress explicitly gave courts the ability to relieve some debtors from their obligation to complete a postpetition financial management course, the exceptions are narrow and Mr. Schultz has not provided evidence that he qualifies. In relation to Mr. Schultz's request for relief from his duty to attend the meeting of creditors, the court cannot disregard a plain reading of Bankruptcy Code sections 341 and 343 and established canons of construction. Congress built a wall between bankruptcy courts and meetings of creditors; that wall requires Mr. Schultz to direct any request for accommodations regarding his section 341(a) meeting to the United States trustee.

---

[29] *See, e.g.*, *In re Matthews*, 516 B.R. 99, 100 n.1 (Bankr. N.D. Tex. 2014) (explaining that "the court lacks the authority to outright excuse a debtor from attending the § 341 Meeting of Creditors" and recognizing that "a trustee has discretion regarding the **manner** of conducting the § 341 Meeting of Creditors, including the manner in which the debtor appears"); *In re Martin*, 12 B.R. 319, 320 (Bankr. S.D. Ala. 1981) ("The mandatory direction is: 'The debtor shall appear and submit to examination.' If Congress had intended any exercise of judicial discretion, it could very easily have added a proviso to the effect: 'Unless excused by the bankruptcy court for good cause shown.' No such language was used; and to read such language into the statute is nothing more or less than judicial legislation."). The court acknowledges that some courts have assessed these requests on the merits. In the end, however, such decisions either ignore the threshold need to locate the court's authority to grant the requested relief or, like the *Bergeron* decision discussed earlier, do not comprehensively assess such authority. *See, e.g.*, *In re Alleca*, 582 B.R. 530, 532-33 (Bankr. M.D. Ala. 2018) (concluding that "[t]he plain language of § 343 suggests that the Court has little discretion to excuse a debtor from physically attending the meeting of creditors," but then applying "dire necessity" standard set forth in local rule without discussing authority to adopt a rule excusing debtors from a statutory obligation); *In re Moore*, 2012 WL 6947810, at *2 (Bankr. S.D. Ga. Aug. 24, 2012) (acknowledging that "[t]he plain language of [section 343] mandate[s] Debtor's appearance" while also assuming some "discretion" to assess the merits of a request for relief from the mandate without discussing the source of such discretion).